**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TAKE2 TECHNOLOGIES LIMITED and THE CHINESE UNIVERSITY OF HONG KONG, | § § § § |
| *Plaintiffs*, | § § |
| v. | § § Civil Action No. 22-1595-WCB |
| PACIFIC BIOSCIENCES OF CALIFORNIA, INC., | § § § |
| *Defendant*. | § § § |

## MEMORANDUM OPINION AND ORDER

In this patent case, plaintiffs Take2 Technologies Limited ("Take2") and The Chinese University of Hong Kong ("CUHK") allege that defendant Pacific Biosciences of California, Inc., ("PacBio") infringes U.S. Patent No. 11,091,794 ("the '794 patent").[1]  On March 2, 2023, PacBio moved to transfer this case under 28 U.S.C. § 1404(a) to the Northern District of California.  Dkt. No. 18.  On July 25, 2023, I held a telephonic hearing on the motion to transfer.  For the reasons set forth below, the motion is GRANTED.

### I.     Background

Take2 is a Cayman Islands company, and CUHK is a university in Hong Kong.  They have sued PacBio, a Delaware corporation that has its headquarters in Menlo Park, California.  The plaintiffs' complaint alleges that PacBio both directly infringes and induces others to infringe one or more claims of the '794 patent.  Dkt. No. 2 ¶¶ 36, 66.

---

[1]  CUHK is the owner and Take2 is the exclusive licensee of the '794 patent.  Dkt. No. 2 ¶ 32.

The technology underlying the '794 patent relates to the study of "epigenetics," or "changes to a DNA molecule caused by chemical modifications to the nucleotide subunits of DNA rather than changes to the base sequence itself." *Id.* ¶ 11.  One type of chemical modification that can give rise to a change in a subject's DNA is "methylation," which involves the addition of a methyl group to one or more nucleotides in a DNA sequence. *Id.* ¶ 12.  Claim 1 of the '794 patent, which is the only independent claim of that patent, recites "[a] method for detecting a modification of a nucleotide [e.g., methylation] in a nucleic acid molecule." '794 patent, cl. 1.

In April 2022, PacBio released a new version of its "SMRT Analysis" software suite, called "SMRT Link v11.0," which is designed for use with "sequencing data generated by PacBio's Sequel II and Sequel IIe products." Dkt. No. 2 ¶ 27.  The plaintiffs allege that the Sequel II and Sequel IIe systems that "are equipped with or otherwise use SMRT® Link software v11.0" infringe the claims of the '794 patent. *Id.* ¶ 35.  In particular, the plaintiffs contend that the capability of that software to perform "5mC [5-methylcytosine] CpG [d]etection" and "methylation detection" is infringing. *Id.* ¶¶ 27–28.  The plaintiffs also allege that PacBio induces the end users of those products to directly infringe by providing guides and other resources to customers that allow the customers to detect nucleotide modifications "in a manner that infringes the '794 patent." *Id.* ¶ 66.

According to the plaintiffs, one end user of the Sequel II and Sequel IIe systems is the University of Delaware DNA Sequencing and Genotyping Center ("the UD Center"), which is located in Newark, Delaware. Dkt. No. 37 at 2.  A page on PacBio's website identifies a number of "Certified Service Providers," including the UD Center. Dkt. No. 38-3 at 7.  That same page indicates that the UD Center uses both the Sequel II and Sequel IIe systems. *Id.*  Moreover, the UD Center's website promotes its use of the Sequel IIe system, including the capability to perform

"5-base genome sequencing (A, T, G, C, 5mC)" and to "detect[] methylation patterns across the genome."  Dkt. No. 38-5.

Notably, PacBio had a business relationship with both Take2 and CUHK prior to the commencement of this action.  In January 2021, researchers at Take2 and CUHK published an article about their new model for detecting nucleotide modifications, called the "HK model."  Dkt. No. 2 ¶ 14.  According to the plaintiffs' complaint, the HK model uses "sequence reads generated with a PacBio sequencing platform."  *Id.* ¶ 13.  After their article was published, the researchers at Take2 and CUHK sent the article to PacBio because they "thought that PacBio would be excited to learn of the Take2/CUHK Team's discovery using the PacBio sequencing platform."  *Id.* ¶ 15.

Shortly thereafter, the team at Take2 and CUHK began to discuss the possibility of a collaboration with PacBio.  *Id.* ¶ 16.  The parties first met in February 2021, at which time both Take2 and CUHK separately signed non-disclosure agreements ("NDAs") with PacBio.  *Id.* ¶ 18.  The parties had a second meeting and follow-on email discussions, but the parties' efforts to finalize a collaboration agreement were ultimately unsuccessful.  *Id.* ¶¶ 19–20.

## II.   Legal Standard

Under 28 U.S.C. § 1404(a), a district court may, for the convenience of parties and witnesses, "transfer any civil action to any other district or division where it might have been brought" if doing so would be "in the interest of justice."  In patent cases, the Federal Circuit has instructed district courts to apply the law of the regional circuit, here the Third Circuit, in evaluating motions to transfer.  *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318 (Fed. Cir. 2021).  The Third Circuit has explained that "[t]he burden of establishing the need for transfer . . . rests with the movant," and that "the plaintiff's choice of venue should not be lightly disturbed."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995).  In evaluating a motion for transfer,

the court must first determine "whether the case could have been brought in the district to which the movant wishes to transfer."  *Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*, No. 21-1365, 2022 WL 16921988, at *3 (D. Del. Nov. 14, 2022) (citing *Jumara*, 55 F.3d at 878).  If venue would have been proper in that district, the court must then evaluate whether the public and private interest factors set forth in *Jumara* favor transfer.  *Id.* at *3–4.  The defendant must show that "the balance of convenience of the parties is *strongly* in favor" of transfer in order to prevail on its motion.  *Paycom Software, Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. 21-01403, 2022 WL 1063845, at *2 (D. Del. Apr. 8, 2022) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).

## III.    Discussion

PacBio argues that its motion to transfer should be granted for two principal reasons.  First, PacBio argues that the forum selection clauses in the NDAs entered into by Take2, CUHK, and PacBio weigh heavily in favor of transferring this case to the Northern District of California. Second, PacBio argues that regardless of whether the NDAs weigh in favor of transfer, the public and private interest factors demonstrate that the Northern District of California is a more convenient forum for this case.

### A.    The NDAs

I begin by addressing PacBio's contention that the NDAs weigh in favor of transfer.  The Supreme Court has explained that "[w]hen the parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013).  That is, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."  *Id.* at 63 (citation omitted).

4

In this case, the NDA that PacBio and Take2 entered into ("the Take2 NDA") contained the following forum selection clause: "[T]he Parties hereby consent and submit to the jurisdiction and venue of the courts of the State of California in the County of Santa Clara and the United States District Courts in the Northern District of California." Dkt. No. 20-1 ¶ 12. The separate NDA entered into by PacBio and CUHK contained no equivalent clause. Dkt. No. 38-10 ¶ 12. The existence of the NDAs raises two questions: (1) whether the forum selection clause in the Take2 NDA applies to the claims asserted by the plaintiffs in this action; and (2) if so, whether the forum selection clause in the Take2 NDA is enforceable against CUHK, which was not a party to that agreement.

With respect to the first question, the Federal Circuit has recently addressed the applicability of a forum selection clause in an NDA to claims regarding patent infringement and validity. *Kannuu Pty Ltd. v. Samsung Elecs. Co.*, 15 F.4th 1101 (Fed. Cir. 2021). In *Kannuu*, the parties disputed whether a forum selection clause in an NDA entered into by the parties precluded the defendants from petitioning for *inter partes* review of the asserted patents. *Id.* at 1106. In holding that the forum selection clause did not apply to an IPR proceeding, the court explained that "[a]n adjudication of patent infringement allegations or a patent's validity are patent-centric considerations" that do not "change, disrupt, or otherwise impact the parties' NDA obligations." *Id.* at 1108. The court added that "the mere possibility of some factual relevancy between the allegations of breach of the NDA and potential evidence in the *inter partes* review" was "too attenuated to place the *inter partes* review petitions within the scope of an agreement that was always about protecting confidential information and was never about patent rights." *Id.* at 1109. Although the plaintiffs' claims in this case are for patent infringement and not for *inter partes* review, the same logic applies; an NDA, which is directed to protecting confidential information

from disclosure by the parties to the agreement, does not govern the parties' rights vis-à-vis the protections afforded by the patent system against the appropriation of intellectual property.

The terms of the Take2 NDA focus exclusively on the treatment of "certain confidential technical, financial or business information" that may be exchanged between Take2 and PacBio. Dkt. No. 20-1 at 1; *see also id.* ¶¶ 1–11.  The agreement adds that "[n]othing in this Agreement shall be construed as granting any rights . . . under any patents or copyrights." *Id.* ¶ 6.  Based on those terms, it is clear that, as in *Kannuu*, the Take2 NDA is "about protecting confidential information" and is not "about patent rights." *See Kannuu*, 15 F.4th at 1109.

PacBio relies on *NuCurrent, Inc. v. Samsung Electronics Co.*, No. 6:18-cv-51, 2018 WL 7821099 (E.D. Tex. Dec. 26, 2018), as supporting its contention that the forum selection clause in the Take2 NDA applies to this case.  In that case, the court held that a forum selection clause in the parties' NDA applied to the plaintiff's trade secret and willful infringement claims because the case required "the application of several provisions of the [parties'] NDA." *Id.* at *8.  In this case, however, the plaintiffs are not asserting a claim for trade secret misappropriation, a breach of the Take2 NDA, or any other cause of action that would require the application of the Take2 NDA. *See id.*  For that reason, the *NuCurrent* case is inapposite.

PacBio also relies on the fact that the plaintiffs' complaint "centrally featured the parties' NDA and consequent business discussions" as part of the "willfulness/induce[d] infringement story."  Dkt. No. 19 at 5.  But the fact that the plaintiffs referred to the NDA in providing background information about the present action "does not bring the entirety of this action under the scope of the forum selection clause in the NDA." *Apple Inc. v. Telefonaktiebolaget LM Ericsson, Inc.*, No. 15-cv-154, 2015 WL 1802467, at *4 (N.D. Cal. Apr. 20, 2015).  Nothing about the plaintiffs' choice to refer to the Take2 NDA in their complaint changes the fact that the NDA

governs an entirely different set of rights—rights relating to the protection of confidential information, as opposed to the patent rights that are at issue in this case.

In view of the above, the Take2 NDA is plainly not directed to the parties' intellectual property rights, and PacBio's arguments to the contrary are unpersuasive. Beyond that, the forum selection clause in the Take2 NDA is permissive. That is, unlike many NDAs, the Take2 NDA does not specify that the listed forum is the exclusive venue for disputes arising out of the NDA. *See, e.g.*, *Kannuu*, 15 F.4th at 1105 (NDA specifying that "[a]ny legal action, suit or proceeding arising out of or relating to this Agreement . . . must be instituted exclusively in a court . . . located within the Borough of Manhattan, City of New York, State of New York and in no other jurisdiction"); *NuCurrent*, 2018 WL 7821099, at *2 (same); *Atl. Marine*, 571 U.S. at 53 (forum selection clause provided that "all disputes between the parties 'shall be litigated'" in certain Virginia courts). Instead, the Take2 NDA provides only that the parties "consent and submit to the jurisdiction and venue" of certain California courts, including the Northern District of California. Dkt. No. 20-1 ¶ 12. In cases in which a forum selection clause is permissive, the presence of such a clause "do[es] not modify" the section 1404(a) transfer analysis. *Wall v. Corona Cap., LLC*, 221 F. Supp. 3d 652, 658 n.37 (W.D. Pa. 2016), *aff'd in relevant part*, 756 F. App'x 188 (3d Cir. 2018).

Accordingly, the Take2 NDA does not support PacBio's contention that this case should be transferred to the Northern District of California. Because the forum selection clause in the Take2 NDA does not apply to the plaintiffs' patent infringement claims, and because the forum selection clause is permissive, I need not address the question whether the forum selection clause in the Take2 NDA would be enforceable against CUHK.

### B.   The Private and Public Interest Factors

I next address the private and public interest factors articulated by the Third Circuit in *Jumara*.  The private interest factors include (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, to the extent that they may be unavailable for trial in one of the forums; and (6) the location of books and records, to the extent that they could not be produced in the alternative forum.  *Jumara*, 55 F.3d at 879.  The public interest factors include (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the degree of court congestion in the two forums; (4) the local interest in deciding local controversies at home; (5) the public policies of the forums; and (6) in diversity cases, the familiarity of the trial judge with the applicable state law.  *Id.* at 879–80.  Overall, I find that the factors weigh strongly in favor of transfer and I will therefore grant PacBio's motion.

### 1.   Private Interest Factors

#### i.   *Plaintiffs' Choice of Forum*

The first private interest factor is the plaintiffs' choice of forum.  A plaintiffs' choice to sue in a particular jurisdiction is a "paramount consideration" in the section 1404(a) analysis, and thus it weighs "strongly" in the plaintiffs' favor, particularly if the plaintiff elects to sue in its home jurisdiction.  *NXP USA, Inc. v. IMPINJ, Inc.*, No. 19-1875, 2020 WL 5665257, at *2 (D. Del. Sept. 23, 2020) (quoting *Shutte*, 431 F.2d at 25).  However, because the plaintiffs in this case are foreign entities that do not conduct business in Delaware, their choice of forum does not weigh "as strongly as it would if Plaintiffs had their principal place of business (or, indeed, any place of business) in Delaware."  *Id.*; *see also Selene Commc'n Techs., LLC v. Trend Micro Inc.*, No. 14-435, 2015 WL 237142, at *1 (D. Del. Jan. 16, 2015) ("[T]he deference to be given to [the plaintiff's] choice of

forum is reduced because [the plaintiff's] principal place of business is in Shaker Heights, Ohio.");

*In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222–23 (Fed. Cir. 2011) (holding that a

Delaware court "placed far too much weight on the plaintiff's choice of forum" in a case in which

the plaintiff was based in Bermuda and the case had no connection to Delaware other than that

Delaware was the place of the defendant's incorporation).  Accordingly, this factor weighs against

transfer, but not as strongly as it would if the plaintiffs had a presence in Delaware.

### ii.    Defendant's Preferred Forum

The second private interest factor is the defendant's preferred forum.  PacBio represents

that it would prefer to litigate this case in the Northern District of California.  Dkt. No. 19 at 10–

11.  This factor therefore favors transfer.  *Id.* at 11; Dkt. No. 37 at 12.

### iii.    Where the Claim Arose

The third private interest factor is where the plaintiffs' claim arose.  In analyzing this factor

in patent cases, courts typically focus on "the location of the production, design and manufacture

of the accused instrumentalities."  *Papst Licensing GmbH & Co. KG v. Lattice Semiconductor

Corp.*, 126 F. Supp. 3d 430, 439 (D. Del. 2015).  Courts may also focus on where the "marketing[]

and sale of the accused products largely occurred," *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, No. 11-

1050, 2013 WL 828220, at *5 (D. Del. Mar. 6, 2013), and in inducement cases, "where the

allegedly inducing instructions were drafted," *Angiodynamics, Inc. v. Vascular Sols., Inc.*, No. 09-

554, 2010 WL 3037478, at *3 (D. Del. July 30, 2010).

PacBio argues that this factor favors transfer because "[v]irtually all of the design, research,

and development of the accused products occurred in [California], as well as the final

manufacturing of the accused products."  Dkt. No. 19 at 11 (citing Dkt. No. 21 ¶ 8).  Mark Van

Oene, the Chief Operating Officer of PacBio, added in a declaration that PacBio's marketing team

is also based in California.  Dkt. No. 21 ¶ 8.  PacBio further represents that "PacBio employees drafted instructions relating to the use of the accused products in California."  Dkt. No. 19 at 12. By contrast, PacBio points out, PacBio "does not have any facility or physical operation located in Delaware."  Dkt. No. 21 ¶ 5.

The plaintiffs do not dispute the above facts regarding the development of PacBio's accused systems, but argue that the use of the accused systems by the UD Center, which is located in Delaware, means that at least the plaintiffs' claim for induced infringement arises in Delaware. Dkt. No. 37 at 12.  PacBio disputes the relevance of the UD Center to the transfer inquiry, arguing that the Center's relationship to this action is "unworthy of weight," for two principal reasons. Dkt. No. 44 at 5.

First, PacBio questions whether the UD Center is a direct infringer of the asserted claims because "no sequencers have been sold in Delaware since the patent-in-suit issued" and because the UD Center's webpages "do not mention anything about running the specialized base modification detection methods accused of infringement."  *Id.* (citing Dkt. Nos. 38-5, 38-6).  The problem for PacBio, however, is that the plaintiffs allege that the Sequel II and Sequel IIe systems became capable of infringing through a software update.  Dkt. No. 2 ¶ 27.  Because the UD Center indisputably uses the Sequel II and Sequel IIe systems, and because the asserted claims are method claims, the question whether a sequencer was sold in Delaware would not seem to answer the question whether the Center may infringe the asserted claims; that is, PacBio may have distributed software updates for sequencers that were sold prior to the issuance of the asserted patents.[2] Moreover, the reference on the UD Center's website to "PacBio's new 5-base HiFi sequencing,"

---

[2] In fact, the SMRT Link v11.0 software (as well as more recent updates to that software) is available as a free download from the PacBio website.  PacBio, *Software Downloads*, https://www.pacb.com/support/software-downloads/ (last visited Aug. 2, 2023).

which includes the detection of 5mC, as well as the UD Center's ability to "detect[] methylation patterns," at least suggests that the UD Center is in possession of the SMRT Link v11.0 software and would be capable of performing the accused methods.[3]  Dkt. No. 38-5.  For those reasons, I am not prepared to conclude that the UD Center has no relationship to the infringement claims in this case.

Second, PacBio argues that the sale of a product to one customer in a particular forum "is not deserving of substantial weight" when the product is sold nationwide.  Dkt. No. 44 at 5 (citing *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009)).  In *Nintendo*, the Federal Circuit held that the public interest factor regarding the local interests of the two districts favored transfer. Although the accused products had found their way into the plaintiff's chosen venue, that venue had "no more or less of a meaningful connection to the case than any other venue," because the accused products were sold nationwide.  589 F.3d at 1198.

As in *Nintendo*, the plaintiffs' infringement allegations are not limited to the use of the accused systems in Delaware.  The list of PacBio's "Certified Service Providers," relied on by the plaintiffs, includes 19 other providers located in the United States that have the Sequel II and/or Sequel IIe systems and thus would appear to be in a similar posture with respect to the infringement

---

[3]  The UD Center website states that the Center offers "5-base genome sequencing . . . with no special workflow or data processing steps."  Dkt. No. 38-5.  That language closely aligns with the description of the SMRT Link v11.0 software update provided in a PacBio press release that is cited in the plaintiffs' complaint:  "PacBio recently enhanced its Sequel IIe system to detect DNA methylation in human genomes at no additional cost, time, or complexity in library preparation or analysis."  PacBio, *PacBio and Children's Mercy Kansas City Expand Collaboration Taking a Multi-Omics Approach to Characterize Rare Disease* (April 21, 2022) [hereinafter PacBio Press Release], https://www.pacb.com/press_releases/pacbio-and-childrens-mercy-kansas-city-expand-collaboration-taking-a-multi-omics-approach-to-characterize-rare-disease/ (cited in Dkt. No. 2 ¶ 28).

allegations as the UD Center.[4]  Dkt. No. 38-3.  Although some induced infringement may have occurred in Delaware, the fact that the Sequel II and Sequel IIe systems are used nationwide significantly undercuts the suggestion that the plaintiffs' infringement claims arose primarily or even substantially in Delaware.

More generally, in view of the significant amount of design, development, and manufacturing activity that has occurred in the Northern District of California, the plaintiffs' claims appear to have largely arisen in that venue.  The UD Center's alleged activities provide some support for keeping this case in Delaware, but overall the inquiry into where the claim arose weighs strongly in favor of transfer to the Northern District of California.  Of course, the UD Center may be in possession of evidence relevant to the plaintiffs' claims, as the plaintiffs contend, but that possibility plays a role in my analysis of the "convenience of witnesses" factor discussed below.

### iv.   Convenience of the Parties

The fourth private interest factor is the convenience of the parties.  With respect to this factor, the court must consider (1) the parties' physical locations; (2) "the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes"; and (3) "the relative ability of each party to bear these costs in light of its size and financial wherewithal."  *ANI Pharms., Inc. v. Method Pharms., LLC*, No. 17-1097, 2019 WL 176339, at *8 (D. Del. Jan. 11, 2019) (quoting *MEC Resources, LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017)).

---

[4]  Moreover, PacBio has asserted in a declaration, Dkt. No. 58, that PacBio has customers throughout the United States that use the Sequel II and Sequel IIe systems but are not identified as "Certified Service Providers."  For example, Children's Mercy Kansas City is not listed as a certified service provider but has at least four Sequel IIe systems in its possession.  PacBio Press Release, *supra* note 3; Dkt. No. 38-3.

PacBio argues that the Northern District of California is more convenient for it because all of its potential employee witnesses live in California and work at PacBio's facility in Menlo Park, which is within the Northern District of California.  Dkt. No. 19 at 13.  Requiring those witnesses to travel to Delaware, PacBio asserts, would be "time-consuming, costly, [and] inefficient."  *Id.* Moreover, PacBio notes that the plaintiffs and their witnesses are largely based in Hong Kong, which is closer to the Northern District of California than it is to Delaware.

The plaintiffs do not significantly dispute any of those facts, but they argue that the convenience factor weighs against transfer for two reasons.  First, they contend, the fact that PacBio is incorporated in Delaware means that PacBio "face[s] an uphill battle in contending that Delaware represents an inconvenient forum."  Dkt. No. 37 at 13 (quoting *Schubert v. OSRAM AG*, No. 12-923, 2013 WL 587890, at *5 (D. Del. Feb. 14, 2013)).  Second, they argue that PacBio has previously brought a patent case in this district and has otherwise "availed itself of the benefits of this forum" by requiring in its bylaws that certain shareholder actions be brought in Delaware.  *Id.* at 13–14.

I agree with PacBio that travel considerations regarding its California-based witnesses are significant and cut in favor of transferring this case to the Northern District of California.  I am less persuaded that the plaintiffs' presence in Hong Kong weighs substantially in favor of transfer, because the plaintiffs' employees will need to travel a significant distance regardless of whether the case is transferred.  *See MEC Resources*, 269 F. Supp. 3d at 226 (observing that the plaintiff's litigation costs "will likely remain the same because its two employees must travel" regardless of which venue is chosen).  Nonetheless, travel from Hong Kong to the west coast of the United States is at least marginally less burdensome than travel to the east coast.

13

There is force to the plaintiffs' argument that PacBio's status as a Delaware corporation undercuts PacBio's contention that Delaware is an inconvenient forum.  However, the Federal Circuit has warned courts not to make the plaintiff's choice of forum and the fact of the defendant's incorporation in Delaware "effectively dispositive of the transfer inquiry."  *Link_A_Media*, 662 F.3d at 1223.  Accordingly, PacBio's incorporation in Delaware will be given some weight, but not dispositive effect.  As for PacBio's choice to litigate other cases in Delaware, the private and public interests necessarily differ from case to case, as each case involves different parties, different claims, and different evidence.  I therefore attribute minimal weight to the fact that PacBio has willingly litigated different claims against different parties in Delaware rather than in the Northern District of California.  Moreover, any weight that may be attributable to PacBio's prior involvement in litigation in Delaware is largely offset by the fact that Take2 has indicated, by agreeing to venue in the Northern District of California for the resolution of any disputes over the Take2 NDA, that it does not regard litigating in that district as unduly burdensome.  *See* Dkt. No. 20-1 ¶ 12.

On balance, I find that the Northern District of California would be a more convenient forum for PacBio, but the convenience factor is lessened somewhat due to PacBio's incorporation in Delaware.  The convenience to the plaintiffs is likely to be approximately the same regardless of whether this case is transferred.  Accordingly, this factor weighs somewhat in favor of transfer.

> *v.*   *Convenience of the Witnesses*

The fifth private interest factor is the convenience of the witnesses, particularly if some of the witnesses would be unavailable for trial in one of the districts.  PacBio asserts that two of its witnesses are likely to be unavailable for trial in Delaware but would be within the subpoena power of a court in the Northern District of California.  The plaintiffs assert that they are likely to call

witnesses and seek discovery from the UD Center, and that there is no equivalent PacBio service provider that is within the subpoena power of the Northern District of California.

The two witnesses that PacBio asserts would be unavailable in Delaware are Richard Hall, "the main software engineer who developed . . . software that includes the computer model that is the accused functionality," and Michael Hunkapiller, the former President and CEO of PacBio who participated in discussions with the plaintiffs and is identified by name in the complaint. Dkt. No. 19 at 14 (citing Dkt. No. 21 ¶¶ 12–13, and Dkt. No. 2 ¶ 19). Mr. Van Oene stated in a declaration that neither of those witnesses is still employed by PacBio, but that both live in the San Francisco Bay Area. Dkt. No. 21 ¶¶ 12–13. I accept PacBio's representation that one or both of those individuals are likely to be called at trial. Moreover, to the extent that any current PacBio employees leave the company prior to trial, they are more likely to be within the subpoena power of a court in the Northern District of California than a court in Delaware. *See Express Mobile, Inc. v. Web.com Grp., Inc.*, No. 19-1936, 2020 WL 3971776, at *3 (D. Del. July 14, 2020) ("It is more likely any former employees reside in the [proposed transferee district] than anywhere else, and there is virtually no likelihood that they reside in Delaware or nearby where they would be subject to this court's subpoena power.").

For their part, the plaintiffs focus on the activities at the UD Center and argue that they will likely call witnesses and seek discovery from the UD Center.[5] The plaintiffs also point out that of the "certified service providers" listed on PacBio's website, none is located within the Northern District of California. *See* Dkt. No. 38-3. However, one of the certified service providers, the "City of Hope Integrated Genomics Core," is located in Monrovia, California. While that service

---

[5] The plaintiffs add that the Maryland Genomics Institute of Genome Sciences, located in Baltimore, Maryland, is another "certified service provider" that is within the subpoena power of the District of Delaware. Dkt. No. 60 at 2; Dkt. No. 38-3.

provider is outside the Northern District of California and is more than 100 miles from any courthouse in the Northern District, it is within the State of California, and therefore employees of that entity are potentially subject to a trial subpoena under Rule 45(c)(1)(B)(ii) of the Federal Rules of Civil Procedure.[6]

As noted above, PacBio represented to the court, in a declaration by Mr. Van Oene, that PacBio has numerous customers throughout the United States that are not certified service providers but use PacBio systems that either have the software containing the accused functionality or are eligible to receive that software via a free update.  Dkt. No. 58 ¶ 1.  Those customers include numerous customers in California, and in particular numerous customers located within the Northern District of California as well.  *Id.*  To the extent that evidence regarding activities by those customers becomes relevant, the presence of those customers in the Northern District of California, which substantially outnumber PacBio's customers in Delaware, provides further support for transferring the case.[7]  *See id.*

---

[6]  Federal Rule of Civil Procedure 45(c)(1)(B) provides that a district court's subpoena power for trial extends to any person who "resides, is employed, or regularly transacts business in person" in the forum state, if the person "(i) is either a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense."  The second prong would potentially apply to employees of the City of Hope service provider, and PacBio represented at the hearing on the present motion that it would reimburse the expenses of any necessary witnesses who would need to travel from Monrovia to the Northern District of California.  Dkt. No. 56 at 26:6–19.

[7]  The plaintiffs argue that the existence of PacBio customers who are not "certified service providers" is of little value to them, because in their view the certified service providers are likely to be in possession of certain evidence of inducement that other customers may not.  Dkt. No. 56 at 19:1–8, 22:4–14.  That contention is unpersuasive, for two reasons.  First, as noted, it is likely that a court in the Northern District of California will have subpoena power over the City of Hope center, which is a certified service provider.  Second, the plaintiffs' complaint does not focus on, or even mention, the certified service providers in describing the plaintiffs' claims.  *See generally* Dkt. No. 2.  In fact, the only PacBio customer identified by name in the complaint is not a certified

Overall, it appears that regardless of where this case is litigated, at least one party is likely to seek testimony from witnesses who will be unavailable in that forum. However, because there are PacBio customers other than the UD Center with employees who could likely be compelled to appear at trial, the unavailability of witnesses from the UD Center is somewhat less weighty than the unavailability of the former PacBio employees. For that reason, this factor weighs somewhat in favor of transfer.

### vi.    Location of Books and Records

The sixth private interest factor is the location of books and records, to the extent that they could not be produced in the alternative forum. Although it would appear to be true that a large amount of relevant documentary evidence is located in the Northern District of California, neither party has shown that there is any likelihood that any such evidence could not be produced in either Delaware or the Northern District of California. *See Jumara*, 55 F.3d at 879 (noting that this factor is "limited to the extent that the files could not be produced in the alternative forum"). Accordingly, this factor is neutral.[8]

---

service provider. *See id.* ¶ 28 (identifying "Children's Mercy Kansas City" as a user of the SMRT Link v11.0 software).

The plaintiffs also argue that the customers identified by PacBio who are not certified service providers may not have in fact downloaded or used the software update containing the accused functionality. Dkt. No. 60 at 1. The same is true of the certified service providers, however; while an inference can be drawn that those providers have the ability to perform the accused methods, there is no evidence in the present record that any certified service provider has actually done so.

[8] PacBio cites two cases in which courts in this district found this factor to weigh slightly in favor of transfer even though neither party "identified any evidence that could not be produced" in the forum chosen by the plaintiff. *Harris v. Lord & Taylor LLC*, No. 18-521, 2019 WL 1854562, at *5 (D. Del. Apr. 25, 2019); *ANI*, 2019 WL 176339, at *9. Those cases are distinguishable because in both cases the court emphasized that no records were identified as being located in Delaware. *Harris*, 2019 WL 1854562, at *5; *ANI*, 2019 WL 176339, at *9. In this case, by contrast, to the extent that relevant discovery may be in the possession of the UD Center, those documents would likely be located in Delaware.

### 2. Public Interest Factors

#### i. Enforceability of the Judgment

The first public interest factor is the enforceability of the judgment. The parties agree that any judgment entered in this case would be equally enforceable regardless of which forum is chosen. Dkt. No. 19 at 16 n.2; Dkt. No. 37 at 15. Accordingly, this factor is neutral.

#### ii. Practical Considerations

The second public interest factor relates to practical considerations that could make the trial easy, expeditious, or inexpensive. Courts in this district have treated this factor as neutral when the parties' contentions regarding this factor "have been raised, in some way, as to other *Jumara* factors," so as to avoid "double-counting" those considerations. *See, e.g.*, *Wiremed Tech LLC v. Adobe Inc.*, No. 18-1066, 2019 WL 2250643, at *5 (D. Del. May 24, 2019) (cleaned up). For that reason, the parties agree that this factor is neutral in this case. Dkt. No. 19 at 16; Dkt. No. 37 at 15–16.

#### iii. Court Congestion

The third public interest factor is the relative court congestion in the two districts. PacBio has submitted evidence of the average time to trial in both the District of Delaware and the Northern District of California. In Delaware, the median time from filing to trial in civil cases is 36 months, and the median time from filing to trial in civil cases in the Northern District of California is 34.7 months. Dkt. No. 20-3 at 15, 67. That difference is insignificant. Although statistics indicate that weighted per-judge caseloads in the District of Delaware are greater than in the Northern District of California, I find that the relative court congestion in the two districts does not weigh decidedly in favor of either forum. Accordingly, that factor is neutral, or at most only slightly favors transfer.

#### iv.   Local Interest

The fourth public interest factor is the local interest in deciding local controversies at home. The Northern District of California ordinarily would have a local interest in this case because PacBio has its headquarters in that district. *Harris*, 2019 WL 1854562, at *5 ("[A] district in which a defendant is headquartered maintains an interest in the litigation.") (citing *In re Amendt*, 169 F. App'x 93, 97 (3d Cir. 2006)).  On the other hand, the defendant's status as a Delaware corporation means that Delaware has at least some interest in adjudicating the dispute. *Ceradyne, Inc. v. RLI Ins. Co.*, No. 20-1398, 2021 WL 3145171, at *8 (D. Del. July 26, 2021).

However, courts in this district have held that the "local interest" factor is typically neutral in patent cases because in general a patent infringement action is "more properly described as a national controversy." *Schubert v. Cree, Inc.*, No. 12-922, 2013 WL 550192, at *6 (D. Del. Feb. 14, 2013).  In *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 375 (D. Del. 2012), Judge Robinson persuasively explained why that is the case:

> [P]atent litigation does not constitute a local controversy in most cases.  Patent cases implicate constitutionally protected property rights.  The resolution of patent cases is governed by federal law reviewed by a court of appeals of national (as opposed to regional) stature.  Moreover, to characterize patent litigation as "local" undermines the appearance of neutrality that federal courts were established to provide and flies in the face of the national (if not global) markets that are affected by the outcome of these cases.

I find the reasoning of the *Schubert* and *Helicos* decisions to be persuasive, and thus conclude that this factor is neutral.  Even considering the local interests of the two districts, as noted above, each forum would have at least some interest in the controversy, further reinforcing the conclusion that this factor is neutral.

#### v.   Public Policies

The fifth public interest factor is the public policies of the respective districts.  It is generally accepted that "Delaware's public policy encourages Delaware corporations to resolve

their disputes in Delaware courts." *Williamsburg Furniture, Inc. v. Lippert Components, Inc.*, No. 19-1993, 2020 WL 331119, at *6 (D. Del. Jan. 21, 2020). However, when the plaintiff is not a Delaware corporation, and the defendant is a Delaware corporation but "does not want to litigate here," courts treat this factor as neutral. *Id.* Moreover, other courts in this district have observed that the public policy of encouraging Delaware corporations to litigate in Delaware "generally applies to the use of Delaware's state courts," and not to the District of Delaware, because patent infringement claims "are resolved in the same manner and under the same Federal Rules of Civil Procedure and Evidence" in every federal district court. *Express Mobile*, 2020 WL 3971776, at *5 (quoting *MEC Resources*, 269 F. Supp. 3d at 228). For those reasons, this factor is neutral.

*vi.*    *Familiarity with State Law*

The sixth public interest factor is the familiarity of the trial judge with the applicable state law in diversity cases. Because this is not a diversity case that would require the application of state law, the parties agree that this factor is neutral. Dkt. No. 19 at 16 n.2; Dkt. No. 37 at 17.

**3.    Balancing the Factors**

Of the private interest factors, one weighs somewhat against transfer, two weigh in favor of transfer, two weigh somewhat in favor of transfer, and one is neutral. Each public interest factor is neutral. Balancing all the factors, I find that the factors as a whole strongly favor transfer. Stepping back from a discrete assessment of each of the factors, I am persuaded that the "center of gravity" of this case is clearly the Northern District of California, not the District of Delaware. *See Juniper Networks*, 14 F.4th at 1323. The only factor of any significance that distinguishes this case from the Federal Circuit's decision in *Link_A_Media Devices* is the possible infringing activity at the UD Center. But it appears that there are a number of such certified providers around the country that are similarly situated with regard to the allegations of infringement. In addition,

20

PacBio has asserted without contradiction that it has many other customers who are not "certified service providers," but who may practice the accused methods. For those reasons, the UD Center's presence in Delaware does not carry particular weight in determining whether this case should be tried in Delaware.  I conclude that PacBio has satisfied the standard for obtaining a transfer under section 1404(a).  PacBio's motion for transfer will therefore be GRANTED.

IT IS SO ORDERED.

SIGNED this 2nd day of August, 2023.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE